Tuten v. The Central Railroad & Banking Company.

Where two employees of a railway company have worked together a day and a half, one throwing timber through a window and the other receiving it on the outside and bearing it off; and where

the one on the inside suddenly and without notice changes from a system of timing his throws through the window which was safe to his fellow-laborer on the outside to a system which was dangerous to the latter, and in consequence the latter was stricken with a piece of timber and injured, the case is one for reference to a jury on the question of negligence and contributory negligence, and the court erred in ordering a nonsuit.

January 11, 1892.                                   *Judgment reversed.*

Master and servant. Railroads. Negligence. Nonsuit. Before Judge HARDEN. City court of Savannah. May term, 1891.

This was a suit by Tuten for personal injuries. At the close of his evidence a nonsuit was granted, and he excepted. He was the only witness. His testimony was as follows: He was hired by and was working for defendant at its car shops, clearing up a scrap-room or helping to do it. It is a place where they keep the scrap lumber and small pieces ripped off of plank. He was hired as a laborer to do anything he was called to do, and was ordered by the foreman of the mill to assist another employee of defendant in clearing up this room, and had worked at it a day and a half when he got hurt. He carried stuff away when the other man threw it out of the window. The other was inside the room pitching it out through the window, and plaintiff was to take it away from where the other threw it out to an engine where it was burnt up. He would take what he could pick up, carry it, and come back and get more. He had to stoop down, of course, to get them. While he would be there picking up a turn, the man inside the room would lean them up on end in the window with the other end inside, and while plaintiff was away, would pitch them out. This had gone on for a day and a half. The morning he was hurt he had carried stuff away, and when he went back from dinner had made one trip and gone for a second, and it was on the second he was hurt. The foreman ordered him to hurry up

the job at that time. Plaintiff went there and picked the stuff up. He would always look up at the window to see if anything was coming, did not see anything and went to work picking up. He saw the man on the inside piling the stuff in the window, as above stated, which signified to him that the man was preparing to work while he (plaintiff) was gone; this was the way the thing was done. He proceeded to pick up the stuff when a piece was shot out of the window and broke the upper bone of his left eye. When he went up there to get the stuff to take it away, he would look to see what the man was doing inside, and without saying anything at all would just look, and supposed that the man looked too; plaintiff looked to see what the man was doing, and at this time he was piling it up in the window, one end in the window and the other end down in the room. Plaintiff stooped down and picked up several pieces, and was in the act of picking up another when the man shot out the "first" piece. There was some stuff on the floor where plaintiff was picking it up that the man had shot out while plaintiff was gone, and plaintiff came back and was making up what he could carry off again, and was hurt as above stated, the piece which struck him being the first piece the man had pitched out after plaintiff came back. He had never pitched out any while plaintiff was working before that. Plaintiff picked up this lot in the way he had picked up the other lots; the man had piled up stuff in the window that way before, and after piling it up would just pitch it out of the window when plaintuff was not there. The window was where he could see plaintiff. Sometimes the man would go to the window and look out, and sometimes would stand back inside and look out; if he would go to the window he could see plaintiff outside. The floor plaintiff was on was higher than that the man was on, but the window-

sill of the room was on a level with plaintiff, and when the man got this lumber on a level he could shove it over in the direction plaintiff was, which brought the lumber on a line with plaintiff's eye when plaintiff stooped down. Plaintiff was twelve or fifteen feet from the window, and the man had to pitch the stuff across this intervening space; he could lean it on the window-sill and shove and pitch it enough to clear the intervening space, and when he was doing that plaintiff was opposite to where he was. There was nothing to prevent his seeing plaintiff if he had looked. The window was about three feet square, and plaintiff did not think that when a small man was standing up his head would be above the window. The man was not quite as tall as plaintiff, who could see out of the window and had done it several times. He could not stand in any part of the room and see out of the window where he was standing, but "you could do this when you got opposite the window." It requires a man to go about the room to get the pieces, but if he piled it upon the window there was no necessity of his going around. Plaintiff came there and looked at the window, saw the man inside and placing the stuff in the window, and then went to work to pick up the stuff as he had been doing, and picked up five or six pieces when the man shot one out of the window which struck him. There was a house on the platform on which plaintiff was standing. Plaintiff was not behind it; was behind it when he got his turn and started off. He had to come from behind this shed to pick up this stuff, and until he did come from behind it, was not visible to any one inside.

WM. R. LEAKEN and R. R. RICHARDS, for plaintiff.
LAWTON & CUNNINGHAM, for defendant.